IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

GMC REAL ESTATE, LLC,

        Plaintiff,

v.                                                              CIVIL ACTION NO. 2:21-cv-00151
                                                JUDGE GOODWIN

AmGUARD INSURANCE COMPANY,

        Defendant.

# Memorandum of Law in Support of AmGUARD Insurance Company's Motion for Summary Judgment

      AmGUARD Insurance Company ("AmGUARD"), by counsel, respectfully files this *Memorandum of Law in Support of AmGUARD Insurance Company's Motion for Summary Judgment* ("Motion").  As set forth in more detail below and in AmGUARD's Motion for Declaratory Judgment (ECF Nos. 70, 71), which is incorporated herein by express reference, this Court should grant AmGUARD's Motion because AmGUARD never insured GMC Real Estate, LLC's ("GMC Real Estate" or "Plaintiff") real property located at 1401 Charles Avenue, Dunbar, West Virginia.  Rather, GMC Real Estate provided, through its agent, Ellis Insurance Agency, an application and quotation materials to AmGUARD that indicated that GMC Real Estate sought to insure property located at 1401 Dunbar Avenue, Dunbar ("Dunbar Avenue Property").  Because no claims exist and no damage occurred to the Dunbar Avenue Property, this Court should grant AmGUARD's Motion.

## Statement of Facts

On or around June 29, 2019, GMC Real Estate incurred a loss at an approximately 100,000 square foot warehouse that it owns located at 1401 Charles Avenue, Dunbar, West Virginia (the "Charles Avenue Property"). [*See* Depo. Tr. of Charles Rashid, attached hereto as Ex. 1, at pp. 17, 132.] Specifically, unknown individuals vandalized and stole the copper components from seven (7) HVAC units affixed atop the Charles Avenue Property. [*See* Police Report, attached hereto as Ex. 2.] At the time of this incident, GMC Real Estate obtained businessowners' coverage from AmGUARD (the "Policy"). Importantly, the Policy did not cover the Building but, instead, covered the Dunbar Avenue Property. [*See* Policy, attached hereto as Ex. 3 at Businessowner's Policy Declarations p. 2.] On August 13, 2019, Mr. Rashid, on behalf of GMC Real Estate, provided notice to AmGUARD of the loss to the HVAC units affixed atop the Charles Avenue Property ("Claim"). [*See* Ex. 1 at p. 120.] The Claim only pertained solely to damages caused by the vandalism to seven (7) HVAC units affixed atop the roof of the Charles Avenue Property. [*See* Ex. 1 at pp. 85-86.]

On June 25, 2021, GMC Real Estate filed this civil action, asserting breach of contract, common law bad faith, and violations of the Unfair Trade Practices Act ("UTPA") arising from AmGUARD's handling of the Claim. As litigation progressed and AmGUARD evaluated GMC Real Estate's claims in advance of the parties' mediation, AmGUARD discovered in the Policy and the Policy application materials that the Policy covered the approximately 4,000 square foot building owned by a nonparty to this civil action located at 1401 Dunbar Avenue, Dunbar, West Virginia, ***and not*** 1401 Charles Avenue, Dunbar, West Virginia, owned by GMC Real Estate, which is an approximately 100,000 square foot warehouse.

In 2019, one of the principals of GMC Real Estate, John Blaker ("Mr. Blaker"), contacted Ellis Insurance Agency ("Ellis") to "quote a building" for a commercial policy.  [*See* Depo. Tr. of Danielle Ellis, attached hereto as Ex. 4 at 21:02-21:07.]  As an independent insurance agent, Ellis solicited quotations from carriers, utilizing a variety of information exclusively provided by GMC Real Estate.  [*See id.* at 21:02-22:16.] This process required Ellis, on March 25, 2019, to generate a "Commercial Insurance Application" for GMC Real Estate ("Application").  [*See* Commercial Insurance Application, attached hereto as Ex. 5]; [*see also* Ex. 4 at  42:17-44:08.]  The Application listed the property to be insured as "1401 Dunbar Ave" and indicated that the building to be insured was approximately "4,000 s.f."  [*See* Ex. 5 at p. 2]; [*see also* March 27, 2019 Smart Choice Email, attached hereto as Ex. 6.]  The rating information provided in the Application was only for "1401 Dunbar Ave."  [*See* Ex. 5.]

At the time, Ellis did not have many direct appointments with insurers, so Ellis also worked with an insurance broker called Smart Choice Insurance to procure commercial policy quotations for AmGUARD.  [Ex. 4 at 21:08-21:10.]  To secure carrier quotations from Smart Choice Insurance, Ellis, once again, used the information that Mr. Blaker, of GMC Real Estate, previously provided.  [*Id.* at 21:20-22:02; 45:02-46:20.]  Specifically, Ms. Ellis testified that "**[t]he address, the construction of the building, the square footage, all of those things . . . provided to Smart Choice, which then they provided to [Am]Guard, were given to me by John Blaker [of GMC Real Estate.]**"  [*Id.* at 21:22-22:02 (emphasis added).]  Ellis also submitted the Application, which contained 1401 Dunbar Ave., Dunbar, West Virginia, as the property to be insured, to AmGUARD for purposes of AmGUARD providing a quotation to GMC Real Estate.  [*See id.* at 46:01- 47:07.]

Ultimately, Smart Choice Insurance secured quotations from several carriers that Ellis then presented to GMC Real Estate.  [*Id.* at 49:03-49:24.]  GMC Real Estate reviewed the commercial

quote summaries from AmGUARD, Farmers and Mechanics [1], and State Auto Insurance Company[2]—all of which identified the insured property as the Dunbar Avenue Property. [*Id.* at p. 49.] GMC Real Estate reviewed the quotations, accepted AmGUARD's offer as it was the most competitive from a cost perspective, and entered into the Policy. [*Id.* at p 49.] Throughout the process, GMC Real Estate never discussed nor alerted Ellis or any of the potential insurers, including AmGUARD, that GMC Real Estate's Application and quotation materials mistakenly identified the insured property as the Dunbar Avenue Property rather than the Charles Avenue Property. [*Id.* at 50:01-50:07.]

Based upon the information contained in the Application and provided through the quotation process, AmGUARD issued the Policy to GMC Real Estate. Just like the Application and the quotation materials, the Policy identified "1401 Dunbar Ave., Dunbar, WV 25064-291" as the insured property under Section I – Property Coverages and Limits of Insurance of the Policy. [Ex. 3 at p. 2.] The Policy's insuring provision concerning Section I – Property provides: "A. Coverage. We will pay for direct physical loss or damage to Covered Property ***at the premises described in the Declarations*** caused by or resulting from any Covered Cause of Loss." [Ex. 3 at p. 1 of Businessowner's Coverage Form BP 00 03 01 10 (emphasis added).]

**Plaintiff's Claim and this civil action arise from a theft/vandalism loss that occurred at the Charles Avenue Property**. It is undisputed that the Application and quotation materials provided by GMC Real Estate to Ellis contained incorrect information, which AmGUARD relied upon in issuing a Policy to GMC Real Estate. The information provided by GMC Real Estate to Ellis in the application/quotation process was material to AmGUARD's acceptance of the risk and

---

[1] [*See* Commercial Quote Summary from Farmers and Mechanics, attached hereto as Ex. 7.]

[2] [*See* Commercial Quote Summary from State Auto Insurance Company, attached hereto as Ex. 8.]

material to the hazard accepted by AmGUARD.  [*See* Declaration of Shayne McGrady, attached

hereto as Ex. 9.]  Based on these undisputed facts, simply no claims exist against AmGUARD.

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure authorizes this Court to award summary

judgment when (1) there is an absence of any genuine issue as to any material fact; or (2) legal

entitlement to judgment exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see*

*also Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 217 (4th Cir. 1987).  "The

party opposing a properly supported motion for summary judgment may not rest upon mere

allegations or denials of his [or her] pleading, but 'must come forward with specific facts showing

that there is a genuine issue for trial.'"  *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008)

(quoting *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586 (1986)).  The opposing party "must do

more than simply show that there is some metaphysical doubt as to the material facts."  *Emmett*,

532 F.3d at 297 (internal quotations omitted).  Finally, not just any issue of fact advanced by the

opposing party will suffice.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  Rather, the opposing party must, in response, present this Court with admissible evidence,

which demonstrates a *genuine* issue of *material* fact.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at

586.

## Argument

### I.    No contract existed between AmGUARD and GMC Real Estate to insure 1401 Charles Avenue, Dunbar, West Virginia.

West Virginia law recognizes that "language in an insurance policy should be given its

plain, ordinary meaning."  *See Jenkins v. City of Elkins*, 738 S.E.2d 1, 7 (W. Va. 2012) (internal

citations omitted).  Thus, "[w]here the provisions of an insurance policy contract are clear and

unambiguous they are not subject to judicial construction or interpretation, but full effect will be

given to the plain meaning intended." *Id.* (internal citations omitted).  The insured "bears the burden of establishing a prima facie case that the claim falls within the scope of coverage." *Cooper v. Westfield Ins. Co.*, 488 F. Supp. 3d 430, 437 (S.D. W. Va. 2020).

In this case, the Policy's insuring provision concerning Section I – Property provides as follows:  "A.  Coverage.  We will pay for direct physical loss of or damage to Covered Property ***at the premises described in the Declarations*** caused by or resulting from any Covered Cause of Loss."  [*See* Ex.  3 at p. 1 of Businessowner's Coverage Form (emphasis added).]  The Policy's Declarations page provides an address of "1401 Dunbar Ave., Dunbar, WV 25064-2921" as the insured property under Section 1 – Property Coverages and Limits of Insurance of the Policy.  [*See* Ex. 3 at p. 2 of Declarations.]  It is undisputed that the Claim did not occur "at the premises described in the Declarations" because the loss occurred at the Charles Avenue Property and not the Dunbar Avenue Property insured under the Policy.  [*See* Exs. 1-6, 9.]  AmGUARD possessed no contractual obligation to cover GMC Real Estate's losses that occurred at the Charles Avenue Property, because AmGUARD does not, and has not, insured the Charles Avenue Property under the Policy.

Accordingly, this Court should grant summary judgment on Plaintiff's breach of contract claim because AmGUARD could not, as a matter of law, breach the Policy for a loss that occurred at the Charles Avenue Property—a property owned by Plaintiff that AmGUARD never insured under the Policy.[3]

---

[3] AmGUARD further adopts the arguments and authority contained in AmGUARD's Brief in Support of Motion for Declaratory Judgment, which AmGUARD incorporates as if set forth fully herein.  [*See* ECF No. 71.]

II.     **In the alternative, to the extent GMC Real Estate argues that a mistake occurred by the Policy insuring 1401 Dunbar Ave., instead of 1401 Charles Ave., such a mistake requires the Policy be set aside or rescinded.**

"West Virginia contract law requires mutual assent to form a valid contract."  *New v. GameStop, Inc.*, 753 S.E.2d 62, 70 (W. Va. 2013).  There must be mutual assent in an insurance contract to:  "all essential elements of an insurance policy . . . the subject matter of the insurance, the risk insured against, the commencement and the period of the risk undertaken by the insurer, the amount of the insurance, and the premium and the time of payment."  *Gardner v. E.I. DuPont De Nemours and Co., Inc.*, No. 00-1834, 2001 WL 378276, at *3 (4th Cir. 2001).  Without mutual assent on all essential elements of a contract, the supposed contract does not exist, and neither party is bound to the terms contained therein.

In this case, the undisputed facts show that AmGUARD and GMC Real Estate never reached a meeting of the minds concerning the risk to be insured in the Policy.  [*See* Exs. 1-9.]  All of the application/quotation materials provided by GMC Real Estate, through Ellis and Smart Choice, to AmGUARD indicated that the property to be insured was a 4,000 square foot building located at 1401 Dunbar Ave., Dunbar, West Virginia.  [*See* Exs. 4-8.]  However, it now appears that GMC Real Estate desired to insure the approximately 100,000 square foot Charles Avenue Property.  Because the parties never had a meeting of the minds on the actual property to be insured by the Policy, the Policy between the parties simply does not exist for lack of mutual assent.

Additionally, GMC Real Estate's mistake of fact in applying for and entering into the Policy to insure 1401 Dunbar Ave., Dunbar, West Virginia, instead of 1401 Charles Ave., Dunbar, West Virginia, necessitates the Policy being set aside.  "As a general rule, one who enters into a contract or performs some act while laboring under a mistake of material fact is entitled to have the transaction or the act set aside in a court of equity."  Syl. pt. 1, in part, *Webb v. Webb*, 301

S.E.2d 570 (W. Va. 1983).  "A mistake of fact consists of an unconscious ignorance or forgetfulness of a material fact, past or present, or a mistaken belief in the past or present existence of a material fact which did not or does not exist."  *Chesapeake Appalachia, L.L.C. v. Hickman*, 781 S.E.2d 198, 215 (W. Va. 2015).  "A party cannot avoid the legal consequences of his [or her] actions on the ground of mistake, even a mistake of fact, where such mistake is the result of negligence on the part of the complaining party."  Syl. pt. 5, *Spitznogle v. Durbin*, 738 S.E.2d 562 (W. Va. 2013).

In this case, the undisputed evidence indicates that GMC Real Estate, through its principal, Mr. Blaker, provided the incorrect property address of the property to be insured to Ellis.  [*See* Exs. 4-8.]  This mistake by GMC Real Estate resulted in Ellis utilizing the incorrect property address in applications and quotations submitted to carriers for purposes of procuring a commercial policy for GMC Real Estate.  [*See* Exs. 3-8.]  AmGUARD, relying on the incorrect and material information contained in the application/quotation materials, provided a quotation to GMC Real Estate and subsequently entered into the Policy.  [*See id.*]  Accordingly, GMC Real Estate provided the incorrect address of the property to be insured to AmGUARD, and this mistake necessitates this Court setting aside the Policy.

Finally, West Virginia Code § 33-6-7 requires that the Policy be rescinded.  *See* W. Va. Code § 33-6-7.  In support of this argument, AmGUARD expressly incorporates by reference the authorities cited and arguments contained in *AmGUARD Insurance Company's Brief in Support of Motion for Declaratory Judgment* as if set forth fully herein.  [*See* ECF No. 71 at pp. 6-7.]

III.    **This Court should grant summary judgment on GMC Real Estate's common law bad faith claim, because without a cognizable breach of contract claim, GMC Real Estate's common law bad faith claim fails as a matter of law.**

This Court should grant summary judgment on GMC Real Estate's common law bad faith claim because a plaintiff must show an underlying breach of an insurance policy to assert a common law bad faith claim.   "Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and (3) damages for aggravation and inconvenience."   *See* syl. pt. 2, *Sizemore v. State Farm Gen. Ins. Co.*, 505 S.E.2d 654 (W. Va. 1998).   Under West Virginia law, a common law bad faith claim extinguishes if no coverage exists under the insurance policy.   See *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 513 S.E.2d 692, 711 (W. Va. 1998).   "**[T]he policyholder must first substantially prevail against his [or her] insurer on the underlying contract action.**"   *See Jones v. Sanger*, 618 S.E.2d 573, 582 (W. Va. 2005) (Davis, J. concurring) (emphasis added) (quoting syl. pt. 5, *Jordache Enters., Inc.*, 513 S.E.2d 692).

In this case, AmGUARD never insured Plaintiff's Charles Avenue Property.   [*See* Exs. 3-9.]   As a result, there is no binding insurance contract between AmGUARD and Plaintiff that covers, or covered, the Charles Avenue Property, which is the location of Plaintiff's subject loss. Without a binding insurance contract between the parties that insures the Charles Avenue Property, Plaintiff cannot maintain its common law bad faith claim against AmGUARD because Plaintiff cannot—under any circumstance—substantially prevail on a breach of contract claim against AmGUARD because such a claim simply does not exist.   *See, e.g.*, syl. pt. 5, *Jordache Enters.,*

*Inc.*, 513 S.E.2d 692. Accordingly, this Court should grant summary judgment on GMC Real Estate's common law bad faith claim.

**IV.    This Court should grant summary judgment on Plaintiff's UTPA claim because Plaintiff does not have an insurance policy with AmGUARD that covers the Charles Avenue Property.**

West Virginia Code § 33-11-4(9) prohibits insurers operating in West Virginia from engaging in unfair claim settlement practices. *See* W. VA. CODE § 33-11-4(9) (2021). West Virginia Code § 33-11-4(9) sets forth specific unfair claim settlement practices that violate the UTPA. *See id.* Notably, all of those unfair claim settlement practices relate to an insurer's conduct that arises from the handling of a "claim" under an insurance policy between the insured and the insurer. *See id.* While the UTPA does not define "claim," the interpreting regulations promulgated by the Insurance Commissioner of West Virginia define a "claim" as "any communication by a claimant to an insurer or its agent which reasonably apprises the insurer or agent of an occurrence **which might give rise to liability under a policy or contract of insurance**." W. VA. C.S.R. § 114-14.2.11 (emphasis added); *see also Wilson v. Liberty Ins. Underwriters, Inc.*, No. 2:07-0478, 2008 WL 11380082, at *5 (S.D. W. Va. Sept. 12, 2008).

It is undisputed that GMC Real Estate lacks an insurance policy with AmGUARD that covers the Charles Avenue Property wherein the subject loss and the Claim arose. [*See* Exs. 1, 3, 9.] As a result, AmGUARD could not violate the UTPA because no underlying insurance contract existed between AmGUARD and GMC Real Estate covering the Charles Avenue Property. GMC Real Estate cannot maintain a UTPA claim against AmGUARD when AmGUARD possessed no contractual obligation to adjust or settle GMC Real Estate's Claim arising from the loss at the

Charles Avenue Property.  Accordingly, this Court should grant AmGUARD's Motion and dismiss GMC Real Estate's UTPA claim.

## Conclusion

For the reasons set forth above, the reasons set forth in *AmGUARD's Motion for Declaratory Judgment* (ECF Nos. 70, 71.), and for any reason appearing equitable or just, this Court should grant AmGUARD's Motion and enter summary judgment in AmGUARD's favor on all claims asserted by GMC Real Estate.

AMGUARD INSURANCE COMPANY

By Counsel,

/s/ Patrick C. Timony
Patrick C. Timony (WVSB # 11717)
Joshua A. Lanham (WVSB # 13218)
Bowles Rice LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia  25325-1386
(304) 347-1100
ptimony@bowlesrice.com
jlanham@bowlesrice.com

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GMC REAL ESTATE, LLC,

      Plaintiff,

v.                                CIVIL ACTION NO. 2:21-cv-00151
                                     JUDGE GOODWIN

AmGUARD INSURANCE COMPANY,

      Defendant.

## CERTIFICATE OF SERVICE

I, Patrick C. Timony, do hereby certify that on this **20th day of April 2023,** I filed the

foregoing ***Memorandum of Law in Support of AmGUARD Insurance Company's Motion for***

***Summary Judgment*** via the Court's CM/ECF system, which will send notification of such filing

to the following CM/ECF participant:

Michael D. Payne, Esquire
Redman & Payne, PLLC
205 Capitol Street, Suite 400
Charleston, West Virginia  25302
*Counsel for Plaintiff*

Daniel J. Twilla, Esquire
BURNS WHITE LLC
Burns White Center
48 26th Street
Pittsburgh, Pennsylvania  15222
*Co-Counsel for AmGUARD Insurance Company*

/s/ Patrick C. Timony
Patrick C. Timony (WVSB #11717)

15319690.2