FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

GMC REAL ESTATE, LLC,

                Plaintiff,

v.                                CIVIL ACTION NO.  2:21-cv-00151

AMGUARD INSURANCE COMPANY,

                Defendant.


MEMORANDUM OPINION AND ORDER

      Pending before the court are Defendant AmGUARD Insurance Company's Motion for Summary Judgment [ECF No. 74] and Plaintiff GMC Real Estate, LLC's Motion for Summary Judgment [ECF No. 76]. A critical issue necessary for the resolution of this matter, and to address the pending motions identified herein, is the agency status of Danielle Ellis, an insurance broker who acquired the subject insurance policy at the request of the plaintiff, and on behalf of the defendant. Based on settled principles of West Virginia law, I **FIND** that Ms. Ellis is an agent of the defendant, AmGUARD Insurance Company ("AmGUARD"). Additionally, because a genuine dispute exists as to material facts in this case, the court **DENIES** the parties' Motions for Summary Judgment [ECF Nos. 74, 76].

I.     **Background**

      In March 2019, John Blaker, the owner of GMC Real Estate, LLC ("GMC"), contacted R. Paige Ellis Insurance Agency to obtain quotes for insurance for a recently purchased building in Dunbar, West Virginia. [ECF No. 71-4, at 50:17–

51:3].[1] The agent who took Mr. Blaker's call and prepared the application for insurance was Danielle Ellis. *Id.* Ms. Ellis states that Mr. Blaker told her that he planned to use the building he sought to be insured "for storage for his main business, American Roofing Products," and indicated that the building was located "next door" to that business. *Id.* at 20:21–21:1. Ms. Ellis believes that Mr. Blaker provided her with all relevant information regarding the property to be insured, including the address, the construction of the building, and the square footage. *Id.* at 21:20–24. Ms. Ellis input that information into a Commercial Insurance Application, which she then submitted to Smart Choice, a service provider that submits applications for insurance to companies like AmGUARD. [ECF No. 75, at 3]. Smart Choice forwarded GMC's application to AmGUARD and several other companies to obtain quotes for the property listed in the application—1401 Dunbar Avenue, Dunbar, West Virginia 25064 (the "Dunbar Avenue property"). *Id.* Ms. Ellis then presented the returned quotes to Mr. Blaker for review, and he ultimately chose AmGUARD's quote for a binding commercial liability policy. *Id.* at 3–4; [ECF No. 71-4, at 22:19–22, 49:16–24]. On April 22, 2019, AmGUARD issued Businessowner's Policy Number GMBP018172 (the "Policy") to GMC. *See* [ECF No. 74-3]. The Declarations page describes the insured premises as the Dunbar Avenue property. *Id.* at 2.

On June 29, 2019, vandals destroyed various HVAC units on the roof of a commercial warehouse owned by GMC, located at 1401 Charles Avenue in Dunbar,

---

[1] When citing Ms. Ellis' deposition [ECF No. 71-4], the court uses the page numbers shown on the top-right corner of the reporter's transcript. For all other citations to the record, the court uses the page numbers assigned by the federal judiciary's Case Management/Electronic Case File system.

West Virginia (the "Charles Avenue property"). [ECF No. 1, ¶¶ 5–6]. The Charles Avenue property sits next to Mr. Blaker's American Roofing Products business. *See* [ECF No. 71-4, at 35:17–24]. Shortly after the destruction, GMC filed a claim for insurance coverage under the Policy issued by AmGUARD. [ECF No. 1, ¶¶ 7–8]. The Policy provides that AmGUARD "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [ECF No. 74-3, at 6]. As previously stated, the Declarations page includes the address for the Dunbar Avenue property under the section describing the insured premises. *Id.* at 2. Nowhere does the Policy reference the Charles Avenue property. This issue forms the basis of GMC's Complaint filed against AmGUARD on March 5, 2021, which asserts claims for breach of contract and common law and statutory bad faith. [ECF No. 1].

AmGUARD, which has denied GMC coverage, contends that Ms. Ellis served as GMC's agent when she submitted the insurance application containing the address for the incorrect property. [ECF No. 80, at 6–8]. Thus, AmGUARD argues that the vandalism to the Charles Avenue property does not trigger the Policy, which provides coverage only for the premises described in the Declarations—i.e., the Dunbar Avenue property. [ECF Nos. 74, 75]. On the other hand, GMC argues that it initially sought coverage for the Charles Avenue property and any reference to the Dunbar Avenue property—which is not even owned by GMC and is located across the street from American Roofing Products—was a clerical error made by Ms. Ellis and should not preclude coverage. [ECF Nos. 77, 81]. GMC likewise argues that Ms. Ellis is an

agent of the insurer, and thus any mistake made by her in preparing the insurance application is attributable solely to AmGUARD. [ECF No. 81].

Accordingly, one of the key issues for consideration in this case is Ms. Ellis' status as an agent. That is, the court must determine based on West Virginia law whether Ms. Ellis was acting as an agent for AmGUARD or GMC when she filled out the application for insurance in March 2019. Here, West Virginia law dictates that Ms. Ellis was AmGUARD's agent because she solicited an application for insurance on its behalf.

## II.    Legal Standard

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

When ruling on a motion for summary judgment, the court reviews all the evidence "in the light most favorable" to the nonmoving party. *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000) (quoting *Food Lion, Inc. v. S. L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 227 (4th Cir. 2000)). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely

to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. *Id.* at 248–52. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### III. Discussion

In its Complaint, GMC alleges the following three claims against AmGUARD: Breach of Contract (Count I), Common Law Bad Faith (Count II), and Unfair Trade Practices (Count III). [ECF No. 1]. Each party seeks summary judgment on all three claims. [ECF Nos. 74, 75, 76, 77]. The court will address each claim in turn. But before doing so, it must first deal with the issue of agency.

a. Agency

West Virginia Code § 33-12-22 establishes that "[a]ny person who shall solicit[2] within this state an application for insurance shall, in any controversy between the insured . . . and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured."[3] *See also Benson v. Cont'l Ins. Co.*, 120 F. Supp. 2d 593, 595 (S.D. W. Va. 2000); *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 859 (W. Va. 1991) ("[T]he solicitor of the application for insurance should be regarded for all purposes as the agent of the insurer in any controversy between it and the insured or his beneficiary." (quoting *Knapp v. Indep. Life & Accident Ins. Co.*, 118 S.E.2d 631, 635 (W. Va. 1961))); *Knapp*, 118 S.E.2d at 635 (finding that Ray W. Ellis of Ellis Insurance Agency, the broker who solicited the application for the original family medical insurance policy at issue but neglected to forward a rider limiting coverage for cancer treatment to the insured, was the agent of the insurer).

The Supreme Court of Appeals of West Virginia has defined an agent as "a representative of his principal in business or contractual relations with third persons." Syl. Pt. 2, *Teter v. Old Colony Co.*, 441 S.E.2d 728, 730 (W. Va. 1994) (quoting Syl. Pt. 3, *State ex rel. Key v. Bond*, 118 S.E. 276, 276 (W. Va. 1923)). The court explained that "[a] principal is bound by acts of an agent if those acts are either

---

[2] To "solicit" means "attempting to sell insurance or asking or urging a person to apply for a particular kind of insurance from a particular company." W. Va. Code § 33-12-2(p).

[3] West Virginia law recognizes only one narrow exception to this rule for brokers working with surplus lines liability insurers. W. Va. Code § 33-12-1 (stating that article twelve "does not apply to excess line and surplus line agents and brokers"); *see also Am. Equity Ins. Co. v. Lignetics, Inc.*, 284 F. Supp. 2d 399, 407 (N.D. W. Va. 2003). Because AmGUARD is not a surplus lines carrier, that exception is inapplicable to this case.

within the authority the principal has actually given his agent, or within the apparent authority that the principal has knowingly permitted the agent to assume." *Thompson v. Stuckey*, 300 S.E.2d 295, 299 (W. Va. 1983) (citing *Gen. Elec. Credit Corp. v. Fields*, 133 S.E.2d 780, 783–84 (W. Va. 1963)).

Because Ms. Ellis solicited an application for insurance, she is an agent of the insurer issuing the policy *in any controversy* between the insured and the insurer. *See* W. Va. Code § 33-12-22; *Knapp*, 118 S.E.2d at 635. Ms. Ellis was therefore an agent of AmGUARD for whom she acquired the policy at issue. As AmGUARD's agent, any mistake in the application which originated with Ms. Ellis will be attributable to AmGUARD. Syl. Pt. 1, *McDonald v. Beneficial Standard Life Ins. Co.*, 235 S.E.2d 367, 367 (W. Va. 1977) ("If the facts regarding the risk are correctly stated to the agent of an insurance company, but erroneously inserted by him in the application, the company is chargeable with his error or mistake." (quoting Syl. Pt. 2, *Bays v. Farmers' Mut. Fire Ass'n of W. Va.*, 171 S.E. 253, 253 (W. Va. 1933))).

### b. Breach of Contract

In this case, a question of fact exists as to the source of the incorrect information contained in the insurance application. If GMC—i.e., Mr. Blaker—incorrectly provided Ms. Ellis with the address for the Dunbar Avenue property, then GMC is not entitled to relief from its own unilateral mistake. But if GMC communicated the correct property to Ms. Ellis and Ms. Ellis stated the incorrect address on the insurance application, then AmGUARD "is chargeable with [her] error

7

or mistake" and should have paid GMC's insurance claim.[4] *Bays*, 171 S.E. at 254 (quoting Syl. Pt. 5, *Coles v. Jefferson Ins. Co.*, 23 S.E. 732, 732 (W. Va. 1895)) (affirming insurer's liability where a soliciting agent inaccurately described the barn to be insured in an insurance application and the insured "fail[ed] to read the paper attached to the policy and to discover therein the misdescription of the barn"); *Jennings v. Farmers Mut. Ins. Co.*, No. 02-C-373, 2008 W.V. Cir. LEXIS 27, at *7 (W. Va. Cir. Ct. May 22, 2008) ("If [the agent] was negligent in the application process, then [the insurer's] recourse [is] to promptly pay the [plaintiff's] claim and seek compensation from [the agent] for damages caused by his negligent misrepresentation.").

The Supreme Court of Appeals has explained that if there is "conflicting testimony presented concerning the source of the misrepresentation[] on [Plaintiff's] application," then the matter is "correctly submitted to the jury for resolution." *Jarvis v. Mod. Woodmen of Am.*, 406 S.E.2d 736, 741 (W. Va. 1991). Such a conflict exists in this case, rendering summary judgment inappropriate on GMC's breach of contract claim.

### c. Common Law Bad Faith

In *Hayseeds, Inc. v. State Farm Fire & Casualty*, the Supreme Court of Appeals recognized a common law bad faith cause of action for an insured who must sue its own insurer over a property damage claim. 352 S.E.2d 73, 80 (W. Va. 1986). The court

---

[4] The parties do not dispute that the type of damage that occurred is a covered cause of loss. In other words, AmGUARD's sole reason for refusing to pay GMC's claim is because the otherwise covered loss occurred at a location allegedly not covered by the Policy.

8

explained that "[w]henever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." Syl. Pt. 1, *id.* at 74. In determining whether an insured has substantially prevailed against its insurance company, the court must consider "the status of the negotiations between the insured and the insurer . . . . Where the insurance company has offered an amount materially below the damage estimates submitted by the insured, and the jury awards the insured an amount approximating the insured's damage estimates, the insured has substantially prevailed." Syl. Pt. 2, *Thomas v. State Farm Mut. Auto. Ins. Co.*, 383 S.E.2d 786, 786 (W. Va. 1989); *see also* Syl. Pt. 4, *Miller v. Fluharty*, 500 S.E.2d 310, 313 (W. Va. 1997) ("When examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds. If the policyholder makes a reasonable demand during the course of the negotiations, within policy limits, the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information. The insurance carrier's failure to promptly respond is a factor for courts to consider in deciding whether the policyholder has substantially prevailed in enforcing the insurance contract . . . .").

In support of its Motion for Summary Judgment, AmGUARD contends that GMC "cannot maintain its common law bad faith claim against AmGUARD because [GMC] cannot—under any circumstance—substantially prevail on [its] breach of contract claim" as no insurance contract exists between the parties for the Charles Avenue property. [ECF No. 75, at 9]. In support of its own motion, GMC asserts that it is entitled to *Hayseeds* damages based on AmGUARD's "failure to provide coverage." [ECF No. 77, at 11].

As the court previously explained, GMC's breach of contract claim must be submitted to the jury for resolution. *See supra* Section III.b. To substantially prevail on its claim, the jury must award GMC "an amount equal to or approximating the amount claimed by . . . [GMC]." Syl. Pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647, 647 (W. Va. 1990). Consequently, the court cannot determine whether GMC has substantially prevailed on its underlying property damage claim until after the jury returns a verdict at trial. *See* Syl. Pt. 5, *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 513 S.E.2d 692, 695 (W. Va. 1998) ("In order for a policyholder to bring a common law bad faith claim against his insurer, . . . the policyholder must first substantially prevail against his insurer on the underlying contract action."); *Thomas*, 383 S.E.2d at 790 ("The term 'substantially prevail' necessarily refers to a verdict in favor of the insured on the underlying property damage claim."). For this reason, neither party is entitled to summary judgment on GMC's common law bad faith claim.

### d. Unfair Trade Practices

The purpose of West Virginia's Unfair Trade Practices Act ("UTPA") "is to regulate trade practices in the business of insurance," by prohibiting the use of all "unfair or deceptive acts." W. Va. Code § 33-11-1. As relevant to this case, subsection 33-11-4(9) of the UTPA prohibits any insurer from using the settlement practices listed[5] "with such frequency as to indicate a general business practice." To maintain a claim of an alleged violation of subsection 33-11-4(9), a plaintiff must show "[m]ore than a single isolated violation of [the UTPA's prohibitions]." Syl. Pt. 3, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252, 253 (W. Va. 1981), *overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721 (W. Va. 1994). If a plaintiff's lawsuit is based on an insurance company's conduct while handling a single insurance claim, "multiple violations of [the UTPA's prohibitions], occurring [during the course of that] claim [may be sufficient" to establish a general business practice if "the violations arise from separate, discrete acts or omissions in the claim settlement [process]." *Id.* at 260; Syl. Pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1, 3 (W. Va. 1996).

---

[5] In its Complaint, GMC alleges that AmGUARD violated subsections 33-11-4(9)(b) and (9)(f) of the UTPA. [ECF No. 1, ¶¶ 31–32]. However, in its Memorandum of Law in Support of its Motion for Summary Judgment, GMC suddenly asserts that AmGUARD violated subsections (9)(b) and (9)(d) of the UTPA, without reference to subsection (9)(f). [ECF No. 77, at 11]. A plaintiff may not raise claims in a motion for summary judgment that were not initially alleged in its complaint. *See Jarvis v. Dist. Taco, LLC*, No. DKC 23-1029, 2023 WL 4085872, at *4 (D. Md. June 20, 2023). Accordingly, the court will disregard GMC's mention of subsection (9)(d) and only consider whether GMC is entitled to summary judgment on the alleged violation of subsection (9)(b). That subsection prohibits an insurer from engaging in a "general business practice" of "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." W. Va. Code § 33-11-4(9)(b).

   For informational purposes, subsection (9)(f) prohibits an insurer from engaging in the practice of "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Id.* § 33-11-4(9)(f).

AmGUARD denies liability on the ground that the UTPA does not apply to any of the conduct alleged in this case. The insurer asserts that the unfair claim settlement practices contained in the UTPA "relate to an insurer's conduct that arises from the handling of a 'claim' under an insurance policy." [ECF No. 75, at 10]. The UTPA's supporting regulations define a "claim" as "any communication by a claimant to an insurer or its agent which reasonably apprises the insurer or agent of an occurrence which might give rise to liability under a policy or contract of insurance." W. Va. Code R. § 114-14-2.11. AmGUARD contends that it could not have violated the UTPA "because no underlying insurance contract existed between [it] and GMC . . . covering the Charles Avenue Property." [ECF No. 75, at 10]. On the other hand, GMC contends that AmGUARD's conduct in handling its claim clearly violates the UTPA. [ECF No. 77, at 11].

Again, questions exist concerning the circumstances resulting in the formation of the Policy. *See supra* Section III.b. The jury might agree with AmGUARD that no contract existed between the parties for the Charles Avenue property. However, if the jury concludes that the parties intended for the Policy to cover the Charles Avenue property, rather than the Dunbar Avenue property—that is, Ms. Ellis made a mistake—then AmGUARD had a duty under the Policy to pay GMC for covered losses. If that is the case, GMC's notice of loss to AmGUARD for the Charles Avenue property constituted a "claim" under an insurance policy. *See* W. Va. Code R. § 114-14-2.11. The jury would then need to evaluate AmGUARD's conduct subsequent to

GMC filing its claim to determine whether a UTPA violation occurred. Accordingly, neither party is entitled to summary judgment on this claim.

IV.    Conclusion

For the foregoing reasons, the parties' Motions for Summary Judgment [ECF Nos. 74, 76] are **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       July 25, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE